Filed 12/14/21  In re M.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re M.C. et al., Persons Coming Under the Juvenile Court Law. | B311839 (Los Angeles County Super. Ct. No. CK98742A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.E. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant A.E.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant A.J.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Eunjung Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother A.E. and father A.J. appeal from orders terminating parental rights to their respective children. Mother appeals from the juvenile court's order as to children M.C. (born 2013), V.C. (born 2014), and D.J. (born 2016). A.J. is the father of only one of the three children, D.J., and appeals the termination of his parental rights as to D.J.

At the selection and implementation hearing, mother's counsel asked the juvenile court to hold a contested hearing to allow her to prove the beneficial parent-child relationship exception to the termination of parental rights. At the contested hearing, mother failed to appear but counsel submitted a letter mother had written. Counsel failed to present any other evidence or argument. The juvenile court found the parental benefit exception did not apply. Mother contends the juvenile court's failure to articulate reasons for its finding is reversible error because it is unclear whether the court applied the correct legal standard. We find no error.

Father adopts mother's arguments on appeal, making none of his own. Father's appeal fails for the same reasons as does mother's. We affirm the challenged orders.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 31, 2016, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a),

---

[1] Due to the length of the dependency proceedings and the single issue raised, we provide only an abbreviated procedural and factual background.

(b)(1), and (j).[2]  The juvenile court sustained the subdivision (a) and (b)(1) counts, finding mother and father engaged in domestic violence in the children's presence, were current abusers of marijuana, and mother failed to protect the children from father's substance abuse.  It dismissed the subdivision (j) count that dealt with claims of sibling abuse or neglect.

At the disposition hearing, the juvenile court removed D.J. from father and all three children from mother.[3]  The court ordered mother and father to submit to random drug testing and individual counseling as well as complete domestic violence classes and parent education classes.  At the six-month and twelve-month review hearings, the juvenile court found mother and father were generally in compliance with the case plan.  During this time, mother consistently visited the children and the monitors reported no problems with her visits.  By September 13, 2017, one month after the twelve-month review hearing, mother had regained custody of the children and father was granted unmonitored visits with D.J.  The juvenile court noted mother's "outstanding progress" in its order.

Two weeks later, mother was arrested for driving under the influence of alcohol while the children were in the car.[4]  She admitted to the children's social worker that she drank "two small glasses of wine" because she "was feeling overwhelmed by

---

[2]     All further undesignated statutory references are to the Welfare and Institutions Code.

[3]     M.C. and V.C.'s father died prior to the initiation of these proceedings.

[4]     M.C. and V.C.'s paternal grandmother retrieved the children after mother was arrested.

everything, the case, the children . . . ." The arresting officer reported mother indicated at the scene she had one glass of wine but unintentionally disclosed at the hospital that she had one bottle of wine. Mother's blood alcohol concentration at the scene was .242 and .244, which is slightly over three times the legal limit, and .20 at the hospital.

The juvenile court authorized the children's removal from mother's custody upon DCFS's petition. The children were placed with M.C. and V.C.'s paternal great-aunt. (D.J. was not related by blood to her half siblings' paternal relatives.) DCFS filed a subsequent petition pursuant to section 342 alleging additional jurisdictional grounds over the children under section 300, subdivision (b)(1). The section 342 petition alleged mother's substance and alcohol abuse rendered her incapable of providing regular care for her young children, citing the drunk driving incident.

## 1. *Termination of Reunification Services*

On February 23, 2018, the juvenile court conducted the 18-month review hearing as well as the adjudication hearing on the section 342 petition. It terminated reunification services for mother and father. Neither parent objected to this ruling. The court also sustained the section 342 allegations against mother and changed father's visitation from unmonitored to monitored due to an altercation between father and mother during one visit. The court initially set a 366.26 permanency plan hearing for June 22, 2018, which was continued several times to allow DCFS to assess and search for viable adoptive parents.

Over the next 20 months, DCFS unsuccessfully explored adoption by maternal and paternal relatives as the permanent plan for the children. In April 2018, the children were placed

4

with foster mother C.S., with whom they had previously lived. In October 2019, DCFS abandoned its efforts to have the children adopted by relatives and recommended legal guardianship with C.S. In August 2020, C.S. committed to adopting the children despite initially preferring legal guardianship.

After reunification services were terminated, mother continued to visit the children consistently. In September 2019, she began regular visits with the children at a visitation center near C.S.'s home. The monitors reported mother was nurturing and engaged with the children during her weekly visits. C.S. also reported mother was consistent with her weekly visits. On the other hand, DCFS reported that during this time father's visits with D.J. were inconsistent. The record shows he only visited her once.

Mother transitioned to virtual visits with the children in 2020 due to restrictions imposed by the COVID-19 pandemic. C.S. reported the children, aged seven, six, and four, sometimes were not interested in speaking to mother but generally enjoyed her virtual visits. Mother resumed in-person visits on June 21, 2020, with a DCFS monitor and COVID-safety measures in place. Mother consistently visited the children every other week during this time.

On November 12, 2020, mother filed a petition under section 388, seeking custody of the children or reinstatement of reunification services and unmonitored visitation "to maintain important familial ties." In support, mother stated she was focused on her sobriety and presented evidence she previously completed alcohol and drug programs in 2017 and 2018. She asserted she was no longer involved with father, had completed domestic violence and parenting classes in 2017, and was

currently enrolled in individual therapy and attending AA meetings. Copies of various completion certificates were attached. She stated she had a close and bonded relationship with each child, she visited them weekly, and each child expressed that she missed mother and wanted to live with her. The juvenile court summarily denied the request, finding it was not in the children's best interest and there was no change of circumstance.

Mother had three virtual visits in November and December 2020, but no in-person or virtual visits after December 10, 2020. Mother explained to the court she missed two scheduled visits because she was sick and had to work.

## 2. *Termination of Parental Rights*

On February 17, 2021, mother appeared with counsel at the section 366.26 selection and implementation hearing via WebEx. Counsel for mother requested the court order a bonding study and set a contested hearing on the issue of adoptability. Counsel stated, "Mother here is asking to set this matter for contest and she and/or the children will testify as to the details of their relationship and their bond which has been previously documented by the county in the October 2020 RPP report at pages 12 and 13." Mother's counsel further requested DCFS interview the children regarding their desire for continued visitation with mother to eliminate the need to call them to testify. Father joined mother's request for a contested hearing. The juvenile court denied the request for a bonding study but set the contested hearing for March 26, 2021. Mother does not challenge on appeal the court's denial of the request for a bonding study.

On March 11, 2021, DCFS interviewed the children to discuss their wishes regarding adoption and visitation with mother. The children's social worker emphasized to the children the importance of knowing their wishes so they can be conveyed to the court. All three children were enthusiastic about adoption by C.S.

Each child reported she had issues with their contacts with mother. Eight-year-old M.C. reported she felt nervous during her calls with mother because "she might scream at me or be mad [C.S.] is going to adopt me." She observed her sisters behaved badly after mother's calls, including screaming and hitting one another. She told the social worker, after the adoption, she wanted to speak with mother on the phone "but no FaceTime or [in-person] visits."

V.C., who was almost seven years old, admitted she sometimes did not talk with mother because she was distracted. She described feeling "happy, angry, scared, nervous" during her calls and chats with mother because mother told her C.S. was not her real family, which made V.C. mad and angry. When asked what kind of contact she wanted with mother after the adoption, V.C. said, "I don't never want to see my mom. I can see her in my dreams." She elaborated she wanted to talk to mother but only if she cannot see her face.

Five-year-old D.J. reported she sometimes liked speaking with mother and sometimes did not like it. She explained, "When I don't talk to her she screams at me." She also stated, "I never talk to her. I never like talking to her." D.J. initially indicated she did not want any contact with mother after the adoption but upon further questioning, said she would be willing to speak to mother "only with voice."

7

At the contested section 366.26 hearing, neither mother nor father appeared. At counsel's request, the court admitted a letter that mother had written:

"I would like for the court to know that I love my daughters with all of my heart and I take accountability for the terrible mistakes I made. I started working very hard to better myself and my life to be able to make better choices for myself and my children. But no matter how hard I tried and how much I changed my life it was never enough in the eyes of the system, a system that did not serve its justice by tearing me and my girls apart. I just as [*sic*] they don't deserve this, I am not a bad mother, I am not a bad person, yes I made bad choices but that does not define me or who I have become today. An independent woman who works hard, has morals, is educated, and is not afraid of whatever life has to throw in her path. I deserve to have my children just like they deserve to have me. Please don't overlook my case and give me the opportunity to be in their life. I will continue to do whatever it takes to prove that I am not the person that I'm portrayed to be. Please don't take the easy route and give my daughters up for adoption."

The court stated it had read and considered mother's letter. Father's counsel did not introduce any evidence or make any argument before the court's ruling. The court found the parental benefit exception did not apply. The court also found by clear and convincing evidence the children would be adopted. It terminated parental rights. Counsel for mother and father objected to the termination of their parental rights for the record. Mother's counsel argued mother had made progress toward her case plan and asked the court to elect any other permanent plan besides adoption. The court did not change its findings or orders.

Mother and father timely appealed.

## ***DISCUSSION***

Mother's – and by extension, father's – sole contention on appeal is that the juvenile court erred when it found the parental benefit exception did not apply without articulating its reasons for the finding. According to mother, it is unclear which legal standard the juvenile court applied to reach its conclusion and she urges us to remand the matter so the court may apply the standard recently set forth by the California Supreme Court in *In re Caden C., supra*, 11 Cal.5th 614.

Before we reach mother's contention, we first address DCFS's assertion that she has forfeited her claim by failing to raise the parental benefit exception below. This argument is meritless. The record discloses mother's counsel requested a contested hearing at the February 17, 2021 selection and implementation hearing to allow mother to demonstrate the parental benefit exception and avoid the termination of her parental rights. The juvenile court granted this request and set the contested hearing for March 26, 2021.

As to the merits of her claim, mother relies on section 366.26, subdivision (b) and *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625 (*Bernadette C.*), to argue the juvenile court was required to articulate its reasons for finding the parental benefit exception did not apply.

First of all, *Bernadette C.* has nothing to do with the parental benefit exception or termination of parental rights. It deals with the appropriate burden of proof at a jurisdiction (preponderance of the evidence) and disposition (clear and convincing evidence) hearing. (127 Cal.App.3d at pp. 624–625.) The court observed: " 'The question of need to articulate the

9

standard of proof employed by a trial court has recently been addressed by our Supreme Court. In essence it held that where a new standard of proof recently has been announced, or where the issue of the applicable standard is unclear, articulation is required. [Citations.] On the other hand, where the issue is well settled, it is presumed that the trial judge applied the appropriate standard and no articulation is required. [Citation.]' [Citation.]" (127 Cal.App.3d at p. 625.) *Bernadette C.* is nearly 40 years old and its "recent articulation theory" has no apparent bearing on the current appeal where the standard of proof is well settled.

We start with the applicable statute. Section 366.26, subdivision (b) specifies that the juvenile court "shall review the [applicable DCFS] report . . . , shall indicate that the court has read and considered it, shall receive other evidence that the parties may present, and then shall make findings and orders" regarding the court's selection of a permanent plan for the dependent child. Although the "clear and convincing standard" is to be applied in determining whether the child is likely to be adopted, even on that issue the statute does not require the juvenile court to articulate the standard of proof. As for the parental benefit exception to adoption in which the parent must prove the exception by a preponderance of the evidence (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1007 (*Valerie A.*), the court is not required to make express findings unless it finds the exception *applies* and adoption no longer is the permanent plan. (*In re Jesse B.* (1992) 8 Cal.App.4th 845, 851.) "If the court finds that termination of parental rights would be detrimental to the child pursuant to clause (i), (ii), (iii), (iv), (v), or (vi), it shall state its reasons in writing or on the record." (§ 366.26, subd.

10

(c)(1)(D).) When the juvenile court finds, instead, that the parental benefit exception does *not* apply and adoption remains the permanent plan (as was the case here), no express findings are required.

"It is apparent from the statutory provisions that the Legislature demands an express finding on the matter of detriment only when the juvenile court determines detriment exists and relies upon it *to refuse* to enter an otherwise proper termination order. [¶] . . . [¶] Otherwise, when the court issues a termination order the appellate court will assume, in the absence of a contrary indication in the record, that the juvenile court considered the question of detriment and found none of the four statutory conditions had been established. In other words, we will imply, from the entry of a termination order, a negative finding on the question of detriment." (*In re Jesse B.*, *supra*, 8 Cal.App.4th at p. 851.) As for the burden of proof, appellate courts have long applied the preponderance of the evidence standard to cases involving exceptions to the termination of parental rights. (See *Valerie A.*, *supra*, 152 Cal.App.4th at p. 1007; Seiser & Kumli, Cal. Juvenile Courts Prac. & Proc. (2021) § 2.171[5][b][ii][A].)

Mother implies *Caden C., supra*, 11 Cal.5th at p. 636, established a new standard to evaluate the statutory exceptions to adoption, thus requiring an articulation of reasons for the finding. Mother is mistaken. *Caden C.* used the preponderance of the evidence standard and did not set forth a new standard of proof. (*Ibid.*) Given these authorities, the juvenile court did not err when it failed to articulate reasons for its finding the parental benefit exception did not apply. There is also nothing in the record that suggests the juvenile court failed to use the

11

preponderance of the evidence standard in evaluating mother's claim of parental-benefit exception.

Even if the juvenile court was required by *In re Bernadette C.* to articulate its reasoning because the criteria used to evaluate the parental benefit exception was unclear prior to *Caden C.*, any error was harmless because mother failed to meet her burden of proof. In *Caden C.,* the Supreme Court identified "three elements the parent must prove [by a preponderance of the evidence] to establish the [parental benefit] exception: (1) regular *visitation and contact*, and (2) *a relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C., supra*, 11 Cal.5th at p. 631.)

Here, mother did not present sufficient evidence to satisfy her burden of proof as to the second element of a beneficial relationship. While her counsel indicated she and the children would testify regarding their relationship and bond, she failed to present any evidence of it. Counsel offered only a letter in which she stated she loved her children, acknowledged her mistakes, and described her efforts to improve. The letter said nothing about her relationship or bond with the children. By contrast, DCFS's interviews with the children, which mother's counsel indicated the court could consider in lieu of their testimony, showed the children's ambivalence towards visits and contact with mother. Each indicated a desire for limited contact with mother after the adoption.

By any standard, the evidence was insufficient to demonstrate the children had "a substantial, positive, emotional attachment to the parent." (*Caden C., supra*, 11 Cal.5th at p. 636; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Given

12

this, we need not address the remaining two elements identified in *Caden C.* In short, mother was not prejudiced by the court's failure to state reasons for its finding that the parental benefit exception did not apply. (*In re Vincent S.* (2001) 92 Cal.App.4th 1090, 1093; see *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1387 [refusal to reverse for a contested hearing because it was an idle act and no prejudice arose from error].)

## *DISPOSITION*

The orders terminating mother's and father's parental rights are affirmed.


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.